Your honors, the first or third case of the morning, call 209-1299, people of the state of Illinois v. Thomas R. McLennon, on behalf of Mr. McLennon, Christopher McCoy, on behalf of the people, Mr. Barry Jacobs. Mr. McCoy, you may proceed. May it please the court, my name is Christopher McCoy and I represent the appellant, Thomas McLennon. On the day in question of this particular case, Mr. McLennon was taken to the hospital against his will, not allowed to leave the hospital on his own, put in restraints, and eventually had blood-drawn EKG wires attached to his chest without his consent. After he removed one of these wires, Mr. McLennon was charged with criminal damage to property and subsequently disorderly conduct. In our brief, we argued that both of these convictions must be overturned because Mr. McLennon was acting in self-defense as he was refusing medical treatment, and secondly, that the disorderly conduct conviction must also be overturned as the state did not prove the breach of the peace element. Turning to the first issue, the state did not prove beyond a reasonable doubt that Mr. McLennon was not acting in self-defense as he was refusing medical treatment. Well, that seems to be the threshold question. The law of self-defense in Illinois is codified, as you know, it's under section 5-7-1 of the criminal code. And it talks about, it invokes the requirement that the force being used by the defendant, quote-unquote, being directed against another person. So the threshold question is, how does directing the force against wires in an EKG machine, how is that directed against another? Well, Your Honor, his force is directed to stop the other person's battery that is ongoing against him. Every person has the right to refuse medical treatment, and knowing interference with this right is a battery. Thus, when the hospital has performed medical treatment on Mr. McLennon without his consent and against his refusal, they are, in a sense, they are conducting an ongoing battery against the person. Thus, by, he's using means to stop that person's battery. Now, an alternate reading of the statute, which is proposed by the state in its brief, would require that the defendant use some force against the person and that, in essence, his force be done against someone to cause some sort of bodily harm to the complaining witness in the case. However, this cannot be how the self-defense statute is meant to be read because it would create the absurd result of incentivizing defendants to use more force and to use more violence against a person. The state's focus is on what the defendant is doing. Instead, the focus and the correct focus for whether self-defense applies is whether, is what is being done to the defendant, what he has to defend himself against. Well, you're saying a battery. The defendant, when Nurse de Crane was attempting to apply the wires or, you know, put the wires on the defendant, he didn't grab her hand at that point. He basically ripped the wires and destroyed the wires. So how is that directed against the battery? Well, it's stopping the ongoing battery, which was putting the wires on him and the unwanted medical treatment. The other reading would force him to grab her hand, force him to have to perhaps punch one of the hospital staff to prevent the battery. Wouldn't that make a little more sense as opposed to having the battery against an inanimate object such as the wires? Well, the battery is being conducted to Mr. McLennan. And, again, the focus needs to be what was done to the defendant to see if self-defense could apply in these cases. Well, how about the Bryant case? Are you familiar with People v. Bryant, which was the criminal trespass? Yeah, it was Bryant. I'm sorry. It's criminal trespass to residents. Yes, Your Honor. And in that case, I mean, there were fighting going on in the house, correct? Yes. Did they find that there was a defense of necessity by going into the house and breaking up the fight? Your Honor, in that case, the court held that self-defense did not apply to the criminal trespass. It did note that necessity was not raised and hinted at the fact that perhaps necessity could be used in that case. Nevertheless, Bryant is distinguishable from the facts in this case. Bryant said that disorderly conduct is different than criminal damage to property. And, in fact, in the case cited in our brief, in Re T.W. T.W. is a disorderly conduct. Yes, and in that case, self-defense was applied to disorderly. But you're not talking about a disorderly here. You're talking about a criminal damage to property. Well, our position is that both convictions should be reversed. Well, let's stick with the criminal damage issue first. Let's take your argument out to another extension that might crystallize the paradox and the problem that you're raising. So you're saying this is part of the battery process. Arguably, somebody has the right to refuse medical treatment. And if somebody then decides that they're in a hospital and the nurse has applied the machine and half an hour goes by, there's no problem. If the defendant suddenly decides he doesn't want to be subjected to this, does he have the right to destroy the machine? And, according to you, self-defense would apply because this is an ongoing battery. Yes, Your Honor. What is – Can you do that? Can you destroy the hospital room at that point and not half an hour later? Well, it's important to remember that whether – the question of whether self-defense applies is different than the question of whether self-defense would be a valid defense in any certain factual case. Whether self-defense applies, I guess, is the question of can the defendant raise it as an affirmative defense to these charges. Now, the defendant could raise it if he indeed, in your hypothetical head, refused medical treatment. Now, the question then becomes is it reasonably – does he – is it reasonable for him to believe that that is a necessary force to take to stop the battery? In your hypothetical, it seems perhaps that if he had not refused any consent – or refused to give his consent, refused any treatment, and then suddenly starts pulling wires off, this would not seem to be a reasonably necessary force to be using. Perhaps at that point the reasonable response would just be to say stop this treatment. I don't want to do this. And, again, the statute, it's – whether or not there's some sympathy to your situation or your position, the statute catifies self-defense. At that point, in that example, the force is being directed against property, not against another assault or trespass on your person. So what are you defending against at that point? Are you referring to your hypothetical or are you referring to the facts of this case? Well, even in this case because the wires had already been attached to him, correct? Yes, and at that point there is an ongoing battery. He has the right to, as everyone does, to control his person and to be able to decide what is happening to him in terms of the medical treatment he's receiving. So there is an ongoing battery. The other meaning of the statute, which is proposed by the state here, is going to, again, incentivize defendants to use more force. Wasn't this same public policy argument raised in Brant and repudiated by indicating that necessity would be available to a defendant in this situation? Well, Brant, again, it's distinguishable because first there is – Well, I'm just asking you this. Wasn't that same public policy argument raised? In Brant they talked about if a car was coming at you, they cited the Texas case, if a car is coming at you and it's about to hit you and you have a gun and you shoot the tires out and for some reason you're charged with criminal damage to property, you couldn't have a self-defense against the criminal damage to property, but you could certainly have a defense of necessity. Why isn't that defense available to this defendant? I believe the defense of necessity would be available. I believe also self-defense is available because he has – again, the battery is being conducted to him. He's defending himself against this force that is coming to him. Brant is looking at something different. You're looking at what's happening to the defendant, and Brant is looking at what the defendant is doing. And Brant, one of the holdings of Brant was because the force was executed against the door in breaking into the house, that is not force against the person, therefore self-defense does not lie to the offense of criminal trespass. Here we have the force being exerted by the defendant against a wire, not against another person. And are you asking us to disavow a holding of Brant? No, I believe Brant is distinguishable for multiple reasons. I think, first of all, that criminal trespass is a different type of offense than criminal damage to property. The criminal trespass, what – all it is is the entry upon the land, and that is what Brant holds. And it specifically looks at just – once the entry is done, the crime is over, criminal trespass. That was a key rationale in the Brant decision. On the other hand, criminal damage is different. Criminal damage, you are using force. There is – Because the state doesn't need to prove force on criminal damage, do they? They only need to prove knowingly. They – but force wouldn't have to be used to damage anything. So it's something that is different than criminal trespass. Moreover, the – I would disagree that Brant – yeah, I would disagree that Brant necessarily says that we totally focus on what the defendant is doing and not what is being done to the defendant. Again, the case of T.W. was cited in Brant, and it was positively cited. There was – Brant case did not say that T.W. was wrong in any way. And Brant said, quote, that the T.W. court, quote, reasoned that because the victim acted physically in such a way to threaten bodily harm, the respondent was entitled to defend herself. So Brant is looking, at least in the case of – when citing T.W., that the – that what the focus should be is what the defendant was done to him and not what the defendant is doing to the victim. I don't think you want to spend all of your time on that. I think we understand the argument. You also have argued that the defendant was acting in self-defense when he engaged in the conduct that resulted in the conviction for disorderly conduct. So what's your argument on that issue? Well, again, disorderly conduct was used as a form of self-defense in T.W., and the T.W. court held self-defense was available. On that note, also self-defense was used as a defense in the case of People v. Grass cited in our brief, and that was a criminal damage to property case. But getting back to disorderly conduct, here, as Brant said, disorderly conduct is different than criminal trespass, and it can involve force. The defendant had not been threatened like you can argue in T.W. There were words spoken. The girl was in her face. So there was actually a threat to disorderly conduct. There was a threat. In this case, he had – the disorderly conduct was – had not even been – there was no threat conveyed to him at the point where he started with the disorderly conduct. I think they just said to him, oh, we may have to hook you up or whatever, and he started freaking out. I mean, there was no imminent threat before the acts that constituted the disorderly conduct even started. Do you understand what I'm saying? I would disagree with that. He was yelling. He was clenching his fists. He was swinging. He needed to be restrained. I think the only thing that the nurse said was – she just talked to him about the planned course of treatment. We're going to have to do this. We're going to have to do that. We might have to put you to EKG. And then he starts freaking out. So how is there any threat of force or any threat against him at that point? So there's a threat of an imminent battery of – the battery of not – of touching him and interfering with his right to control this person. The battery is the knowing interference with a person's body and right to self-control. So the use of force at that point, the – when they said to him you might have to – we're going to do this course of treatment. The force that he exercised to carrying on the disorderly conduct, you're saying that was – that force was necessary at that point? Well, yes, and I think it's very important to look at the entire conduct as context of what had happened that entire evening. He'd been taken in a hospital against his will. That's unrebutted testimony. He had been not allowed to leave the hospital without finding some type of ride, and he's not – they're telling him that they're going to have to give him treatment that he's not consented to. And at this point – So how is it imminent? Upon hearing that there was a planned course of treatment and Ukraine is talking to him, before she directed any physical act toward him or the staff did, he became angry, yelled, punched his fist. Had she touched him at that point? She had not touched him yet, but he's still not – he'd been taken again in handcuffs into a – Well, what's it got to do with her? Where is the imminent use of force? You're in a hospital. The nurse is telling you what they think would be the recommended course of treatment, and all of a sudden you have the right to go crazy? Well, I just don't think this – that one comment by the nurse can be looked at in a vacuum. It has to be seen in what was going on in this entire situation. And what's going on is his requests are being repeatedly ignored by hospital staff, by paramedics. What's the next reasonable thing to do? The reasonable thing is to assert that I am serious about my refusal and to get angry and to yell at what is going on. The nurse used a phrase, I think something about reality, and sometimes we have to try and look at this thing in the real world and lend some reality to the situation. She asked him if he wanted to go home to provide her with a phone number so someone could pick him up. The real world is he's in a hospital. Hospitals, doctors get subjected to malpractice suits all the time. Are you suggesting that somebody they believe is in a serious condition that requires treatment because they decide they don't want treatment? Okay, goodbye, walk out the door, and then there's going to be a problem when he falls going down the stairs, okay? Is it unreasonable for them to ask to give us a number and we'll get a ride and then you can leave? Why is that unreasonable? Well, what's unreasonable is that they're going to do – perform medical treatment on him without his consent. He has the right to refuse medical treatment, and that right is true even if there's life-saving treatment that they're going to offer him. And that's codified in Illinois by Statute 755 ILCS 40-5, that even in the case of life-saving treatment, it's his right. It's his body, and he gets to decide what is going to happen with him. Maybe the hospital is worried about malpractice, but that doesn't give him – They said they were going to treat him no matter what. Did they give him the option of providing a number so somebody could be called? Wasn't there an option that was given to him in this case? He gave a couple of wrong numbers. It's an option, but the option still is he still has the right to refuse medical treatment. And even if they felt he was in no condition, he didn't have the ability to either consent or not consent to treatment. I mean, he – when he took the stand, I believe, in this case, he thought that this woman was in the ambulance. She wasn't even in the hospital, correct? That was his treatment. And as to your first part of the question, there is an emergency exception for when you do not have to. You don't have to go in. Yes, but there are several things why the emergency exception does not apply in this case. First, there was no testimony that there was an emergency or any documentation or any testimony from the nurse, excuse me, about what sort of emergency this was or how a blood draw or an EKG would have helped stop whatever medical condition they thought was going on. Did she say there was a concern with respect to withdrawals? Yes, but if there was – if this was really a medical emergency, why was she going to let him go home if he just provided her phone number? I mean, that shows that there's not some imminent, dire threat. And there's no threat that he – excuse me, there's no testimony that he is so intoxicated or so out of his mind in any way that he cannot consent. I mean, there's simply no testimony to this effect. Well, didn't she state that he – the patient must be sound-minded and alert and oriented to make medical decisions? Didn't she testify to that? Well, her testimony is irrelevant to what the law of Illinois is. I mean, she might think she has an idea of hospital policy, but that – her subjective beliefs and maybe even what is the hospital policy cannot override a defendant's statutory right given to him by the legislature. Why don't we move on to – your last – your overarching argument, too, is the sufficiency of the evidence. The argument wasn't sufficient to convict disorderly conduct beyond a reasonable doubt. Well, depending on how we receive your arguments about self-defense, why don't you at least spend a couple minutes and if you may, Jeff, love dealing with that. Sure. Well, Your Honor, as you know, breach of peace is an element of disorderly conduct. And in every disorderly conduct charged under this particular subsection, a breach of the peace must be shown. It must be shown that the defendant's conduct provoked a breach of the peace. However, here that – proof of that was simply absent. What he was charged with – and let me quote the complaint. He was charged with knowingly becoming irate and made such comments to the medical staff at the hospital. So this – and showing simply becoming angry and yelling is not in and of itself proof of a breach of the peace. And then proceeded to yell at the bartender outside for 10 to 15 minutes using profanity and with people observing him. Well, wouldn't that type of conduct be expected at a bar? Well, Your Honor, I – Or at a ballpark, I think, as they cite in the B.C. case. But is that conduct expected at a hospital? Well, Your Honor, Nurse O'Krane testifies that a hospital is not a calm environment. It's a high-stress environment, and patients are often in pain and people – patients are often upset and yelling. And there's nothing here that in and of itself is not a breach of the peace. Let me make sure I understand the evidence as you read it. Sure. You've mentioned several times that this – the defendant was angry and began yelling. Wasn't there also evidence that while he was yelling, he clenched his fists and began swinging his arms? Nurse O'Krane does testify to that effect. So, I mean, if we're talking about sufficiency of the evidence, it's more than just yelling. I mean, you know, at this high-stress environment, you have an intoxicated person. Perhaps someone might expect people to be yelling, but do people – I mean, would these hospital personnel expect people to be clenching their fists and swinging their arms? Well, first of all, that was not what was charged as the disorderly conduct. What was charged was being irate and making comments to the medical staff. And there's no testimony that these comments were a threat. There's no testimony – There was no medical particulars in this case, I think. No, Your Honor. And there's no testimony of any effect that his behavior had on any of the medical – other medical staff at the hospital. As the cases we cite in our brief of justice and gentry point out, just because people were to look and stop and observe the defendant's conduct, that doesn't mean that he's breached the peace. You need something more. You need this effect on the surrounding crowd, and that simply was not shown by the evidence in this case. Well, surrounding crowd, can it be declaimed? You don't need to have a public – you don't need to be doing this in public, do you? No, a breach of the peace does not have to occur in public, but it's important to note that being – her being alarmed and disturbed is a separate element from the breach of the peace. In the statute, it's – the statute says the defendant's conduct must alarm and disturb and provoke a breach of the peace. And here there's just no proof that his conduct did provoke a breach of the peace. Well, didn't security personnel have to come in and restrain him? Yes, Your Honor. But that's not involving a breach of the peace? Your Honor, that's – again, this is important to look at the context. They're in an emergency room. This is their – their job is to take care of these patients who are often upset with their treatment. And, again, this is what – there's no testimony from anyone else what happened, what the effect of his conduct was. And, therefore, a breach of the peace was not shown in this case. Counsel, thank you. You'll have time for rebuttal. Thank you. Mr. Jacobs, you're up to speak. Thank you. Good morning. I'm Barry Jacobs on behalf of the people. May it please the Court and Counsel. I'm not going to reiterate the facts initially. They're somewhat in dispute, I suppose, regarding – Can you go into this issue of medical battery and whether the emergency exception was given or not? Yes, Your Honor. The emergency exception in this case was shown. I believe it's the fourth element in this case that it would be impractical or impossible to obtain consent from this defendant. The testimony of Nurse DeCrane is clear that the – a patient in this circumstance would have to be able to give clear consent. And in this case, it's the people's position that it was impractical to obtain consent given the defendant's condition, which everyone testified. Well, that may be the case. But Counsel cites a case that for this exception to lie, there has to be expert testimony. And I don't believe the nurse was ever qualified as an expert, correct? She was not qualified as an expert. I believe the qualification of an expert would be requiring if there was an emergency exception. But the other element, I believe it's element four, that it would be impractical or impossible to obtain consent from the patient, would suffice for the emergency exception. In this case, that's what the facts show. Oh, I'm sorry. No. What is your response to Counsel's argument? And I know you placed in his brief that she is not a layperson. She's a nurse, and she should be expected to have to deal with such behavior in the hospital, in the emergency room. She has to cope with intoxication. With regard to the defendant's second argument that his conduct was – But I think he argued that police officers – she should be in the second position. Correct. And there is case law to support that position, that a police officer who's trained in dealing with violent people – and I'm trying to blank on the name of the case. It's the case where the police officer is outside a bar. Truster. Maybe Truster. The police officer is outside a bar, and the defendant is yelling at the police officer. And even though a crowd gathered, there was no evidence that the crowd was alarmed or disturbed. And I believe the court in that case, Fourth District, said that a police officer is trained and is not in the same position as a layperson. However, an emergency room nurse, although trained to provide care for people who are upset with their medical care, people who are in pain, people who are yelling and uncomfortable, is not necessarily the same as a police officer who doesn't receive training. And, in fact, again, the facts in this case indicate that the nurse, Nurse Decrane, was so upset by the defendant's conduct that she called security. She said she normally participated in the restraining process herself, but because of his very egregious conduct – swinging his arms, swinging at staff, and yelling and screaming – she allowed the three security guards to do the restraining. And ultimately, the police were called after that. So I think that the facts show that this is not a simple case where Nurse Decrane's training imbued her with any greater ability to handle this kind of conduct. Well, this police officer exception is interesting because under the facts of this case, I agree, recognizing the Fourth District case, yelling, swearing. If he was dealing with a police officer and engaged in some type of combative behavior and took a swing at the police officer, is that not arguably disorderly conduct? I mean, how far do you go in saying that you can't commit disorderly conduct in the presence of a police officer? I don't disagree. It is disorderly conduct. The way the disorderly conduct statute is written, as well as the committee comments, indicate that this is what the statute sought to protect, this violent, drunken, sometimes drunken behavior. And what's appropriate in a bar with bar patrons will not be appropriate in a library or a more restrained setting. Would you make a counsel's argument that the self-defense that he's asserting is not with respect to the criminal damage to property, but with respect to a medical battery that came out of the criminal damage to property? If I understand that correctly. Certainly, you disagree that he has the defense of self-defense for criminal damage to property. It's the people's position that the defense of self-defense applies to neither charge, either the criminal damage to property charge or the disorderly conduct charge. Ever a disorderly conduct? No, in this particular case. Yes. The Brandt case, which was a second district case, does focus, as I did in my brief, upon the defendant's conduct. And it talks about force directed to prevent a bodily harm. In this case, the defendant, when we talk about the disorderly conduct charge, the defendant is not even alleging that he was threatened with a bodily harm. He was protecting against an unwanted touching, which would disqualify it. But it's more clear with regard to the criminal damage to property complaint, because, as I believe Justice Hudson pointed out, he's directing the force against an inanimate object. By the terms of the statute, self-defense applies when the force is directed against another person or you're defending against another person's imminent use of force. That's not his argument, and that's exactly what we talked about earlier. But he seems to be saying, well, yes, but you have to understand this is a continuing series of events. At the time he directed the force, admittedly, against the property, this was a process of having a medical battery committed upon him. So if he would have done it earlier, would that have been better? If he would have attacked the nurse, wasn't he better off just grabbing the wire? So how do you respond to this idea that the final damage was simply the end result of an ongoing battery against this person? Well, I guess that goes back to the claim that he was attempting to refuse medical care and that the force used by the nurse was unlawful. It's the people's position that there's no evidence other than his own testimony that he told paramedics that he didn't want any medical care. Certainly his actions were violent and egregious, but Nurse Crain testified that he never told her he didn't want medical care. What she did testify was that she offered him the alternative of finding a sober ride to drive him home. He gave her two wrong numbers, laughed about it, and then told her, I want to be here. She did testify by his actions. He took those actions as refusal. She did as she explained the treatment plan and as after she had already placed the electrodes on him, three electrodes, I believe. So it's the people's position that with regard to the disorderly conduct charge, there's simply no showing that he was responding to any imminent threat of bodily harm. But under TW, under the fact scenario here, if he was responding to an imminent threat of bodily harm, self-defense would be available. For disorderly conduct, yes, that is my reading of TW as well. And I do note that Brandt, Your Honor, did consider TW in deciding Brandt and just distinguished the fact situation. Of course, Brandt being the criminal trespass to residence charge. And I would say to Mr. McCoy's argument that criminal trespass to residence and criminal damage to property being different offenses, they clearly are different offenses. However, force is not required to be proved for criminal damage to property, for criminal trespass to residence, or to prove disorderly conduct. But notably, criminal trespass to residence, criminal damage to property are both offenses against property. Self-defense has not traditionally been bound to lie in defenses against property. So I think the argument that he was responding and was forced to break this electron because he was undergoing ongoing battery does not hold for the criminal damage to property charge. I also submitted in the brief the alternative means that he had to refuse treatment. First and foremost, he could have cooperated with the nurse and provided numbers that he could have found his override home. He could have threatened lawsuits at that point. He could have done a number of things rather than just become irate and swing his arms and damage the property of the hospital. Can you respond to counsel's citation in his brief to people versus grass? The criminal damage to property case where justifiable use of force played some part. I believe that's a 1980, an older 1984 case. Page nine. Yes. If I recall that case correctly, and I'm not saying that I do, that was a case where the. There was consideration of. The defendants use the force in terms of the monetary damage caused by the criminal damage to property. And I don't know that that case is directly in the point of this issue, whether or not the affirmative defense of self-defense applies. It might be my position that it does not. So you're saying the case doesn't necessarily hold that it's a defense to the chariot itself, but it might be used as some type of a mitigating factor. That's my understanding. With regard to the defendant's conduct and the charge of disorderly conduct, it's been somewhat covered already here this morning by me. The statute disorderly conduct is clearly written to protect others from these unreasonable intrusions in a place such as an emergency room. To claim that the defendant's conduct was reasonable in this case is a it's quite the stretch. I don't know what other publication or what other alternative to the hospital may have had. And, in fact, I think it was touched upon again by Justice Hudson that the hospital is under an obligation in this case to ensure that the defendant received care if he needed it. And with that and no further questions, I'll retire. Thank you. Recording the response. Your Honor, initially, just to clarify the holding of people, the grass in that case, the defendant was fighting with the victim in a parking lot. The defendant proceeded to throw several different objects at the defendant's car and break the windshield and other parts of the car. The there was some testimony that one of the throws, at least, was done after the victim has started to drive his car at the defendant. So and there was and in that case, the trial court allowed the jury instruction of self-defense to be used. The trial court did not allow for the lesser included charge of misdemeanor criminal damage to property to be used. The appellate court held that this was error not to instruct a jury on misdemeanor criminal damage to property. And the reason was because at least one of the throws could have possibly been done in self-defense. And therefore, the value of the damage, because each throw hit a different part of the car and the proof of trial is able to determine exactly which throw caused what dollar value of damage. So because the there was some issue of whether one of the throws, at least, could be justified in self-defense. Therefore, it was error not to instruct the jury. The court actually used the words justified as self-defense or justifiable use of force. They well, the self-defense instruction was given by the appellate court in their rule. Did the appellate court say that it could have been justified as self-defense? I'm not sure on that question, Your Honor. I believe that it was just without justification and they did not. They did not. The court did not specify. But again, it's the value of because of the value of the property could have been justified on some grounds. Secondly, the state argued that Mr. McClennan was refusing testimony in this case. However, that treatment. Yes. Excuse me. He was refusing treatment. Thank you. This is provided by the testimony from all three witnesses. Nurse Crane said it appeared to her that he was not not consenting to treatment. She said again, he clenched his fists and began yelling. This is not the picture of someone consenting to medical treatment. And furthermore, we have Mr. McClennan's unrebutted testimony that when he was taken into the ambulance, he said that he did not want to go to the hospital. And his testimony that when they before the EKG wires were put on his chest, he said, no means no. I refuse medical treatment. And Nurse Crane does not test does not dispute that. She, in fact, says she just can't remember what Mr. McClennan said. Now, in T.W., all that was there in that case in terms of whether what happened, who was the aggressor and whether the defendant could use self-defense. All that came from the defendant's own testimony. And so the defendant's own testimony here, as well as in T.W., is sufficient to show that he was justified in using self-defense. If you find that the defendant's testimony is credible, correct? Well, Your Honor, it's the prosecution's burden to prove that self beyond a reasonable doubt that self-defense that the defendant was not acting in self-defense. So there is no evidence of what happened before he got to the hospital. And there's no evidence of him not refusing medical treatment. But that aside, even just taking Nurse Crane's testimony, she says it does not appear that he was consenting to medical treatment. So given his actions, this is not, again, the picture of someone that is wanting to be treated. And lastly, the state argues that Mr. McClennan was not facing any bodily harm. However, again, that's rebutted by the testimony at trial. He said he was putting restraints that were so tight it hurt his shoulder. And Nurse Crane was going and she did put a needle in him and draw blood. He was putting the restraints after he acted out, after he flailed his arms and clenched his fists and yelled. He was putting restraints after. Yes, Your Honor. And so but still the medical treatment in and of itself was bodily harm to him. And therefore, he was facing an imminent battery and he could use self-defense. And again, I'd just like to read it. Can you respond to counsel's argument that they did not, that they, the state, did not need to present expert testimony regarding the emergency exception? Well, Your Honor, the cases have held that for the emergency exception to apply, expert testimony is required. But even setting that aside, there was no testimony that there was an emergency or any specifics given what emergency this was. Again, Your Honor. Well, wasn't there testimony from the nurse as to why she proceeded the way that she did? There was, but there was not testimony that there was, this was a particular emergency or that this treatment in any way would serve whatever she thought the medical problem was. And again, he refuses to consent to this testimony. And this refusal. To the treatment. Yes. And this refusal in and of itself negates the emergency exception because it can only be used when it's impossible or impractical to get consent from the defendant. And there's no testimony that Mr. McLennan was in such a state that he could not give his consent. In fact, he was communicating with the doctors and he was showing them by his actions that he did not want to be treated in this manner or be treated at all for that matter. Thank you. I'd like to thank the attorneys for their arguments today. The case will be taken under advisement.